UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,          CASE NO. 00-6158-CR-WPD

Plaintiff,

vs.

JAMES BLAKE BEESON,

Defendant.
_____/

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION

COMES NOW the Defendant, JAMES BLAKE BEESON, by and through his undersigned counsel and files this his Objection to the Presentence Investigation Report as submitted by the Probation Department and would state as follows:

A) The Defendant objects to the description of the offense conduct in this report. The Assistant United States Attorney, Edward Ryan, had informed counsel that he would not call James Tinley, the CS in this matter, and after an investigation of his background, this is not surprising. Mr. Tinley, having previously been charged with escape, robbery, and violations of probation, and other offenses, initially provided information about James Blake Beeson at or about the time he was re-arrested for a violation of probation.

Research on this career criminal reveals that several of the crimes that Tinley was involved with in Georgia were of the "scam" type. The Defendant denies selling drugs to the confidential informant although he concedes that when he was in Atlanta for a meeting, both he and the informant ingested controlled substances.



B) In paragraph 8, there is a discussion of monitored telephone conversations and the fact that the confidential source indicated that he had large sums of money and wishes to invest in real estate. More specifically, Mr. Beeson, having recently declared bankruptcy was working with his father at Hughes Construction, and attempting to solve his serious financial difficulties while he was in the process of going through a divorce. He saw the meeting with the confidential source as a business opportunity to purchase and/or develop prime real estate on Biscayne Boulevard where a profit in the area of $300,000.00 to $400,000.00 could be realized. In the tapes, the informant tells Mr. Beeson that he is interested in the property and has unlimited financial resources. Beeson sees this as an opportunity to extricate himself from serious debt, while at the same time attempting to show his father that he can solve the families' financial problems.

C) With regard to paragraph 9, all of the drug discussion is a predicate to the real estate transaction. Although Beeson concedes his knowledge and involvement, he was to make no money by putting the confidential source together with the supplier of the drugs. His primary objective was the real estate transaction on Biscayne Boulevard. Both Beeson and his father visited the location with a view toward its development by their company.

D) The Defendant objects to the facts contained in Paragraph 12. The Defendant admits that he had conversations with Scriver about the real estate deal, but it was Scriver who initially informed the Defendant that he would have amounts of Ecstasy available in the event anyone was looking to purchase same. It was based upon his knowledge of Scriver's contacts and the confidential source's desire to purchase property in Miami, that Beeson attempted to put these

two individuals together. The business characterized by Scriver as a pyramid business is in fact known as Excel Communications which sells telecommunications equipment and beepers.

E) The Defendant would object to paragraphs 13 and 18 as to the base offense level calculated by the Probation Department. It is the position of the Defendant that this level should be 22 rather than level 24 as set out in paragraph 18. The Defendant has contacted Dr. Terry Hall of Forensic Toxicology Associates who was asked to review and evaluate the evidence currently held by the DEA as represented by the lab reports provided by the Government. Dr. Hall has indicated as follows:

The DEA Lab Report No. 113413 has been reviewed. The controlled substance currently held in DEA Lab #113413 is 2272.9 grams (reserve amounts 1916.7g and 356.2g) Using the drug equivalency table in §201.1, 2272.9g of MDMA would equate to 79.55 kilograms of marijuana. The government removed about 6.28 grams of the evidence and gave it away. Without the amount which they gave away, the total amount converts to 79.916 kilograms of marijuana. An additional amount was also destroyed intentionally after testing was complete.

By stipulation, the parties have agreed to level 22, rather than deal with the potential error factor of the four grams which would place the amount within the level 22 range. Any efforts to reconstruct would be to no avail since in each of the packages quantities of pills have been altered. Additionally, any moisture added to the pills prior to their being weighed would provide additional weight creating a potential for inaccurate weight. Given the small numbers and the high potential for error, the parties conceded level 22 as the most appropriate.

F) The Defendant objects as to role in paragraph 20 of the Presentence Report. Beeson was merely in a position of introducing the buyer to the eventual seller, named Scriver, and was

to receive no remuneration whatsoever for the transaction. Pursuant to U.S. Sentencing Guidelines Manual §3B1.2(b), the Defendant should be accorded a two level decrease for his minor role so as to delineate and differentiate his participation from the other individuals involved in this transaction. The Assistant United State Attorney assigned to this matter after careful evaluation and review, has agreed and stipulated to recommend that this Court sentence the Defendant and give him a two level reduction for his minor participation. This Defendant merely put together an individual looking to purchase drugs with an individual who was selling drugs. He never had the ability to exercise control over the important details of this transaction. He received no share of the proceeds of the sale, and his primary interest was in getting these players together for other reasons. The Defendant's conduct is linked to the instant offense in the following ways:

(1) At the time of the commission of the instant offense, the Defendant was going through an emotional divorce with his wife, facing the prospect of his two children moving to Atlanta, Georgia, after the sale of the marital residence.

(2) That both the Defendant and his father had declared bankruptcy and were in financial difficulties resulting in the potential of foreclosure on the marital residence.

(3) The Defendant had a long standing significant drug problem dating back to 1983 which was confirmed by both Doctors, Caddy (in 1984), Kosches (in 1994) and lastly, by Dr. Michael Brannon, (in August of 2000). This is further confirmed by the fact that although all of his pre-trial urine drops were satisfactory, he had one dirty urine resulting in a modification of his pre-trial release conditions and requiring him to attend a drug program. Mr. Beeson was particularly vulnerable to the persuasiveness of the confidential source, James Tinley, in this

matter, who usually started out conversations talking about real estate transactions, and ending up discussing the purchase of drugs. For illustrative purposes, one of the tapes that would have been used had this case proceeded to trial, is of a conversation between the Defendant and the confidential source, James Tinley, over the telephone discussing various subjects. Once Beeson hangs up the telephone, for some reason the tape continues monitoring the conversation revealing conversations between the confidential source and government agents. The confidential source seems to brag about how he supposedly reeled Mr. Beeson in, while at the same time bragging that he used to be a car salesman. In this instance the source was successful in reeling Mr. Beeson in, while using a real estate deal as bait.

G) For the reasons discussed within, the Court should adopt the Stipulation entered into by the Government with the Defendant. It is both appropriate and supportable by the facts.

H) Paragraph 23 should then be level 20 as opposed to level 24 as reflected in the Presentence Report.

I ) The Defendant would object to paragraph 27 which should then reflect a reduction to level 17 based upon the reasoning set forth in the above paragraphs.

J) The Defendant objects to paragraph 77 which should reflect guideline imprisonment range level 17 from 27 to 33 months.

K ) The Defendant would object to paragraph 83 since the fine range should be between $5,000.00 to $1,000,000.00.

L) The Defendant would object to paragraph 35 since the Court should consider a downward departure pursuant to § 4A1.3, of the U.S. Sentencing Guidelines since the Defendant's prior criminal record may be overstated. The Defendants prior convictions in one

form or another relate to his drug and alcohol problems. With the treatment for drugs and alcohol, the help he will receive while he is in prison, the likelihood of recidivism will be significantly reduced. It is therefore respectively submitted that the Court should consider a downward departure.

**WHEREFORE**, Defendant having filed this his Objections to the Presentence Investigation Report, respectfully requests the Probation Department to make the requisite changes to reflect same as being in conflict.

I HEREBY CERTIFY that a true copy of the foregoing was furnished by mail this 3rd day of November, 2000, to AUSA EDWARD RYAN, Office of the United States Attorney, 500 East Broward Boulevard, 2nd Floor, Fort Lauderdale, Florida 33301; and by hand delivery to DIETRA PRATT, United States Probation Officer, United States Courthouse, 299 East Broward Blvd., Suite 409, Fort Lauderdale, FL 33301.

LYONS AND SANDERS CHARTERED
Counsel for Defendant
600 Northeast Third Avenue
Fort Lauderdale, FL 33301
Telephone: (954)467-8700
Telecopier: (954)763-4856
brucelyons@aol.com (Email)

BY
BRUCE M. LYONS, ESQUIRE
FLORIDA BAR NO. 104975